208 A.2d 99.

JOSEPH PICOZZI *vs.* J. JOSEPH NUGENT, *Attorney General.*

MARCH 18, 1965.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Joslin, JJ.

CONDON, C. J.   These are petitions for compensation under the workmen's compensation act which were docketed in the workmen's compensation commission as No. 63-1262 and No. 63-1283. They were tried together before the trial commissioner but a separate decree was entered in each case.

No. 63-1262 is the employee's petition to review a preliminary agreement for compensation on the ground that

petitioner is presently partially incapacitated. At the conclusion of the hearing the trial commissioner entered a decree denying the petition. Upon petitioner's appeal therefrom the full commission affirmed such decree and entered its decree to that effect. The petitioner duly appealed therefrom to this court.

No. 63-1283 is the employee's original petition for specific compensation for loss of use of his right index finger. The trial commmssioner found that there was a partial loss of use amounting to 50 per cent and entered a decree awarding petitioner specific compensation therefor at the rate of $27 a week for a period of eighteen weeks and also a fee of $75 for petitioner's counsel. From such decree petitioner appealed to the full commission on the ground that the loss of use was total or at least in excess of 50 per cent to some extent as shown by the evidence, and on the further ground that the trial commissioner erred in refusing to award petitioner's expert medical witness, Dr. A. A. Savastano, a witness fee. The full commission sustained the trial commissioner's awards of specific compensation and counsel fee but held that he erred in not awarding Dr. Savastano an expert witness fee. It therefore entered a decree awarding the doctor a fee of $35 and affirming the trial commissioner's awards. From that decree petitioner has appealed to this court.

The appeals were briefed and argued together in this court but in the interest of clarity we shall discuss each appeal independently. Since No. 63-1262 is the basic case upon which the petition for specific compensation depends, we shall consider the reasons of appeal in that case first. In doing so we shall preface our discussion with a summary of the evidence in the record which is relevant to the issues raised in each appeal. This will obviate any necessity of repeating a narration of the facts when we come to a consideration of the appeal in No. 63-1283.

It appears from the evidence that petitioner while employed as a laborer in the division of parks and recreation of the state department of public works sustained an injury to his right index finger arising out of and in the course of his employment on September 25, 1962. The injury was caused when a fellow employee of petitioner accidentally struck his finger with a sledge hammer as petitioner was holding a fence post in position for his fellow employee to drive into the ground.

For approximately six months thereafter petitioner was totally incapacitated and received compensation therefor under a preliminary agreement. During that period he received medical treatment from Drs. Conte and McKendry and at the Dr. Donley Rehabilitation Center. On or about March 4, 1963 he resumed work on the advice of Dr. Conte who told him he could do light work. At first he was given such work as washing windows and sweeping but three days later he was ordered to do his usual heavy laboring work and was told he would have to do it or go home. He tried it until May 27, but found it so painful to his finger he asked to be relieved. On June 22, 1963 he resigned his position and he has not looked for work since because he did not know what kind of work he could do with his hand in that condition.

On August 9, 1963 he filed with the commission his petition No. 63-1262 for review of the preliminary agreement for compensation alleging therein that he was partially incapacitated. At the hearing thereon before the trial commissioner petitioner testified that his right index finger was so stiff that he could not do the work assigned to him without pain all the time through the middle of his hand, that he could not close his hand and "make a fist," and that for this reason he had to resign. He further testified that he treated his hand with a heat lamp but it did no good. In fact it got worse as he kept working. After he stopped work

he was examined by Dr. Savastano and Dr. E. Arthur Catullo.

Doctor Savastano, an orthopedist called by petitioner, testified that he examined petitioner's finger on July 10, 1963 and took X rays as a part of such examination. He described the injury at considerable length, pointing out in detail how it affected adversely the normal use of petitioner's right hand. He emphasized the important part the index finger played in the strength of the hand and expressed the opinion that petitioner had "a permanent stiffness of the interphalangeal joint of the right index finger," that his entire finger as a whole was permanently stiff, and that he could do some work but not any which required forceful gripping with the affected hand.

Doctor Catullo called by respondent testified that he examined petitioner on June 6, 1963 and from his examination and X rays he formed the opinion that the condition of the finger would improve some. He also testified that petitioner should be able to perform work which does not require complete flexion of his right index finger and that such work "probably would help improve the range of motion." When asked in cross-examination "Do you not classify that as a permanent kind of injury?" he answered, "Not necessarily,—no, sir." He was then asked, "Do you classify that as an injury with clearly permanent residuals?" He answered, "Not necessarily, either." When pressed further in cross-examination as to whether there might be some improvement as to stiffness in any particular joint of the right index finger since he examined petitioner, he replied: "It is my feeling, if he didn't have any stiffness at that time, I doubt he would have stiffness, permanent stiffness. I'm talking about, that he would have any more permanent stiffness than he had then."

He was then asked to look at petitioner's hand. After doing so he said the finger was about the same as it was

402

when he examined it in June and that there was the same limitation of motion in the "m. p. joint" of approximately 15 to 20 degrees. In flexion petitioner was missing about 50 or 60 degrees. Whether petitioner could make a fist or how close he could come to making one the doctor said, "I don't think is really going to mean too much in relation to the ability of the man's being able to work."

We have summarized the medical testimony at greater length than usual to show there was a conflict in the testimony as to the extent of petitioner's injury and whether or not it rendered him incapacitated, especially in view of the fact that he actually worked from March to May 27 and on June 22, 1963 he voluntarily quit. After weighing the evidence the trial commissioner found that the preponderance thereof did not show any loss of earning capacity by reason of petitioner's injury, and in this finding the full commission concurred.

In the circumstances, since the workmen's compensation act makes the commission's findings of fact conclusive we cannot weigh the evidence to determine whether the preponderance is otherwise than as found by the commission. *Mis* v. *Washburn Wire Co.*, 97 R. I. 11, 195 A.2d 334. We are thus precluded from weighing the comparative strength and credibility of the conflicting medical testimony. *Barnes* v. *Kaiser Aluminum & Chemical Corp.*, 96 R. I. 469, 194 A.2d 675.

However, petitioner contends that the trial commissioner during the course of the hearing before him exhibited prejudice in the manner in which at one point he interrogated petitioner concerning his injury and his intention to work or sit around for the rest of his life. There is no merit in this contention since on petitioner's appeal this court is reviewing the full commission's decree. On the appeal from the trial commissioner's decree the full commission was

vested with the power to weigh the evidence independently of the trial commissioner's findings and determine for itself wherein lay the weight and credibility. We must assume that it did so without regard to the conduct of the trial commissioner complained of by petitioner. The appeal in No. 63-1262 is denied and dismissed.

In No. 63-1283 petitioner contends in support of his appeal that the full commission erred in upholding the trial commissioner's award of specific compensation for only 50 per cent loss of use because such award was predicated on the trial commissioner's prejudice against him and because it was based on a misconception of the probative credible evidence. As to the first ground we hold it to be without merit for the reason given above in No. 63-1262. The second ground is also without merit since on the question of the extent of the loss of use there was a clear conflict in the testimony of Dr. Savastano and Dr. Catullo, and as we have hereinabove held it was within the sole province of the commission to weigh the evidence and pass upon the credibility of the witnesses.

The petitioner contends further in support of his appeal that since the full commission reversed the finding of the trial commissioner and awarded Dr. Savastano an expert medical witness fee he is thereby entitled to a counsel fee for having successfully prosecuted his appeal in this respect. In our opinion this contention is clearly without merit. Under G. L. 1956, §28-35-32, as amended, counsel fees shall be awarded "to employees who successfully prosecute petitions for compensation, petitions for medical expenses, petitions to amend preliminary agreements and all other employee petitions, except petitions for lump sum commutation, and to employees who successfully defend, in whole or in part, petitions for review filed by employers."

The petitioner's request for an expert medical witness fee does not fall within any of those categories. It was not a

petition in regard to a matter in controversy with his employer. It was rather in the nature of a motion for costs addressed to the discretion of the trial commissioner. The reversal of his refusal to allow the same was not in our opinion the successful prosecution of a petition within the reasonable intendment of the statute. The petitioner's appeal No. 63-1283 is therefore denied.

Each appeal is denied and dismissed, each decree is affirmed, and the causes are remanded to the workmen's compensation commission for further proceedings.

*Vincent A. Ragosta, Robert L. Kiernan,* for petitioner.

*J. Joseph Nugent,* Attorney General, *Joseph L. Breen,* Chief Special Counsel, for respondent.